**No. 25-20264**

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

VALERIE PREVOST,

*Plaintiff - Appellant*

v.

CITY OF HOUSTON, LEGAL DEPARTMENT, LABOR AND EMPLOYMENT,

*Defendants - Appellees*

---

On appeal from Civil Action No. 4:23-CV-04115 in the United States District
Court for the Southern District of Texas, Houston Division

---

**Brief of Appellees**

---

ARTURO G. MICHEL
City Attorney

SUZANNE R. CHAUVIN
Chief, General Litigation Section

Donald B. Hightower
Senior Assistant City Attorney
SBN: 24062780
CITY OF HOUSTON LEGAL
DEPARTMENT
900 Bagby, 4th Floor
Houston, Texas 77002
Telephone:  832.393.6429
Facsimile:   832.393.6259
donald.hightower@houstontx.gov

*Attorneys for Defendants – Appellees City
of Houston, Legal Department, Labor
and Employment*

**No. 25-20264**

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

VALERIE PREVOST,

*Plaintiff - Appellant*

v.

CITY OF HOUSTON, LEGAL DEPARTMENT, LABOR AND EMPLOYMENT,

*Defendants - Appellees*

---

On appeal from Civil Action No. 4:23-CV-04115 in the United States District
Court for the Southern District of Texas, Houston Division

---

**Certificate of Interested Persons**

---

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal. The judge below was the Honorable Charles R. Eskridge, III.

**Appellant:**                                          **Valerie Prevost**

Trial and Appellate Counsel for           Pro Se
Appellant:

**Appellees:**                                          **City of Houston,**
**Legal Department, Labor and**
**Employment**

Trial Counsel for Appellees City of       Marjorie L. Cohen
Houston, Legal Department, Labor          Samantha Cobb
and Employment:                                      City of Houston Legal Department

Appellate Counsel for Appellees          Donald B. Hightower
City of Houston, Legal Department,        City of Houston Legal Department
Labor and Employment:

 */s / Donald B. Hightower*
Donald B. Hightower

*Attorneys for Defendants-Appellees City of*
*Houston, Legal Department, Labor and*
*Employment*

## Statement Regarding Oral Argument

Nothing about this case suggests that oral argument would be helpful. This Court can dispose of this appeal on the briefs.

# Table of Contents

**Page**

Certificate of Interested Persons................................................................ii

Statement Regarding Oral Argument ........................................................ iv

Table of Contents........................................................................................ v

Table of Authorities .................................................................................... 1

Re-Statement of the Case............................................................................ 8

Factual Background ..................................................................................... 9

    A.    The City has strict policies of non-discrimination and non-retaliation. ................................................................................... 9

    B.    Prevost moves offices. ............................................................... 9

    C.    Prevost is non-selected for a promotion in early 2021. .............. 10

    D.    Prevost has a progressive corrective action write-up................... 11

    E.    OIG and the Grievance Committee find the selection decision was well-supported. ............................................................... 11

    F.    Prevost fell two times in 2021. ................................................. 13

    G.    Prevost complains again about gate access. .............................. 15

    H.    Prevost has trouble with emails. .............................................. 16

    I.    Prevost resigns from the City and files an EEOC charge. ........... 17

Procedural Background ............................................................................. 18

    A.    Prevost's Complaint.................................................................. 18

    B.    Conferences with the District Court & Judicial Bias Complaint ................................................................................. 18

    C.    Motions for Summary Judgment .............................................. 20

Summary of the Argument ............................................................ 22

Argument ...................................................................................... 24

    I.     Standard of Review ............................................................. 24

         A.    Rule 56 – Summary Judgment ......................................... 24

         B.    *Pro Se* Litigants .............................................................. 26

         C.    Recusal ......................................................................... 27

    II.    PREVOST'S APPELLANT'S BRIEF FAILS TO SATISFY THE FEDERAL RULES OF APPELLATE PROCEDURE OR THE LOCAL RULES OF THIS CIRCUIT. ........................................................ 28

    III.    THE DISTRICT COURT CORRECTLY BARRED MOST OF PREVOST'S CLAIMS FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES. ..................................................... 30

         A.    The basic facts underlying Prevost's claims were not alleged in her EEOC charge. ..................................... 33

         B.    Prevost's claims based on facts that occurred prior to February 25, 2022 are time-barred. ...................... 34

         C.    Prevost failed to respond to the City's argument concerning exhaustion of administrative remedies in the district court ............................................ 35

         D.    Prevost's arguments on appeal fail to demonstrate substantive exhaustion of administrative remedies. ................................................ 37

    IV.    THE DISTRICT COURT CORRECTLY DETERMINED THAT PREVOST FAILED TO DEMONSTRATE A VALID CLAIM FOR CONSTRUCTIVE DISCHARGE. ...................................................... 38

         A.    The district court properly granted summary judgment against Prevost's constructive discharge claim ............................................................. 38

B.     Prevost failed to demonstrate a fact issue concerning constructive discharge. ................................... 40

V.    THE DISTRICT COURT CORRECTLY DETERMINED THAT PREVOST FAILED TO DEMONSTRATE EVIDENCE OF DISCRIMINATION OR RETALIATION. ........................................... 41

    A.     Prevost failed to provide evidence capable of creating a fact issue as to discrimination or retaliation. ....................................................................... 41

        1.     Prevost failed to establish a *prima facie* case of discrimination. ...................................................... 43

        2.     Prevost produced no evidence of unlawful retaliation. ......................................................... 45

        3.     Prevost failed to show that the City's legitimate non-retaliatory reasons for its actions are pretextual. .......................................................... 46

    B.     Prevost's arguments on appeal are unpersuasive............... 47

VI.   THE DISTRICT COURT PROPERLY DENIED PREVOST'S MOTION FOR SUMMARY JUDGMENT FOR LACK OF EVIDENTIARY SUPPORT. ........................................................... 49

VII.  PREVOST FAILED TO DEMONSTRATE IMPROPER JUDICIAL BIAS BY MAGISTRATE JUDGE CHRISTINA BRYAN. ...................... 50

    A.     Judge Bryan's prior rulings are no basis for recusal.................................................................... 50

    B.     Judge Bryan's impartiality cannot be reasonably questioned................................................................. 52

Prayer for Relief.................................................................... 54

Certificate of Service ................................................................ 55

Certificate of Compliance........................................................... 56

# Table of Authorities

**Page(s)**

## Cases

*Aetna Life Ins. Co. v. Lavoie*,
475 U.S. 813, 821–822 (1986)........................................................ 44

*Agoh v. Hyatt Corp.*,
992 F. Supp. 2d 722, 748 (S.D. Tex. 2014)................................. 37

*Anderson v. Liberty Lobby*,
477 U.S. 242, 247–248 (1986)....................................................... 19

*Andrade v. Chojnacki*,
338 F.3d 448, 455 (5th Cir. 2003) ............................................... 21

*Backe v. LeBlanc*,
691 F.3d 645 (5th Cir. 2012) ....................................................... 26

*Benningfield v. City of Houston*,
157 F.3d 369 (5th Cir. 1998) ....................................................... 33

*Bracy v. Gramley*,
520 U.S. 899, 904 (1997).............................................................. 44

*Brown v. City of Houston*,
337 F.3d 539, 540–41 (5th Cir. 2003)......................................... 18

*Brown v. Kinney Shoe Corp.*,
237 F.3d 556, 566 (5th Cir. 2001) .............................................. 34

*Burlington Northern and Santa Fe Ry. Co. v. White*,
584 U.S. 53, 68 (2006) ................................................................. 39

*Castro v. Tex. Dep't of Crim. Justice*,
541 F. App'x 374, 379 ............................................................25, 26

*Clark v. America's Favorite Chicken Co.*,
110 F.3d 295, 297 (5th Cir. 1997) .............................................. 20

*Clark v. Champion Nat'l Security, Inc.*,
  952. F.3d 570, 582 (5th Cir. 2020) (ADA)...................................... 36, 37, 39

*Clark v. Waters*,
  407 Fed.Appx. 794, 796 (5th Cir.2011) ........................................ 24

*Coggin v. Longview Independent School Dist.*,
  337 F.3d 459 (5th Cir.2003) (en banc)........................................ 35

*Conkling v. Turner*,
  18 F.3d 1285, 1295 (5th Cir. 1994) ........................................... 19

*Dade v. Sw. Bell Tel. Co.*,
  942 F. Supp. 312, 317 (S.D. Tex. 1996) ...................................25, 26

*Davidson v. Fairchild Controls Corp.*,
  882 F.3d 180, 184 (5th Cir. 2018) ............................................ 18

*Davis v. Lumpkin*,
  35 F.4th 958, 962 n.1 (5th Cir. 2022) ........................................ 21

*Davison v. Huntington Ingalls, Inc.*,
  712 F.3d 884, 885 (5th Cir. 2013) ............................................ 24

*Ernst v. Methodist Hosp. Sys.*,
  1 F.4th 333, 337 (5th Cir. 2021) (Title VII).................................. 26, 27, 28

*Favela v. Collier*,
  91 F.4th 1210, 1212 (5th Cir. 2024) .......................................... 18

*Feist v. La. Dep't of Justice, Office of the Atty. Gen.*,
  730 F.3d 450, 454 (5th Cir. 2013) ............................................ 36

*Fine v. GAF Chem. Corp.*,
  995 F.2d 576, 578 (5th Cir. 1993) .......................................25, 26, 27

*Fosu v. Garland*,
  36 F.4th 634, 639 (5th Cir. 2022) (per curiam)............................... 20

*Garcia v. Penske Logistics, LLC*,
  631 Fed. Appx. 204, 207 (5th Cir. 2015) ..................................... 25

*Green v. Brennan*,
578 U.S. 547, 576 (2016)................................................................. 32

*Hall v. UiPath, Inc.*;
123 F.4th 419, 422 (5th Cir. 2024) ............................................... 39

*Hamilton v. Seque Software*,
232 F.3d 473, 477 (5th Cir. 2000) ................................................ 19

*Harris v. City of Schertz*,
27 F.4th 1120, 1123 (5th Cir. 2022) (ADEA) .......................................36, 37

*Harrison v. Brookhaven Sch. Dist.*,
82 F.4th 427, 429 (5th Cir. 2023) ................................................ 37

*Harvill v. Westward Commc'ns, L.L.C.*,
433 F.3d 428 (5th Cir. 2005) ....................................................... 32

*Hudson v. Lincare, Inc.*,
58 F.4th 222, 232 (5th Cir. 2023) ................................................ 39

*Infant v. Law Office of Joseph Onwuteaka, P.C.*,
735 F. App'x 839, 843 (5th Cir. 2018)........................................... 20

*Jefferson v. Christus St. Joseph Hosp.*,
374 F. App'x 485, 490 (5th Cir. 2010)........................................... 25

*Johnson v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*,
90 F.4th 449, 460 (5th Cir. 2024)................................... 36, 39, 41

*Keelan v. Majesco Software, Inc.*,|
407 F.3d 332, 342 (5th Cir. 2005) ............................................... 33

*Kim v. Hospira, Inc.*,
709 F. App'x 287, 288 (5th Cir. 2018)........................................... 19

*Landgraf v. USI Film Prods.*,
968 F.2d 427 (5th Cir. 1992) ....................................................... 33

*Liteky v. United States*,
510 U.S. 540, 555 (1994)............................................................. 45

3

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ........................................................... 24

*Matherne v. Ruba Mgmt.*,
  624 Fed. App'x 835 (5th Cir. 2015) (per curiam) ........................................ 33

*Matter of Assadi*,
  No. 22-50452, 2022 WL 17819599 (5th Cir. Dec. 20, 2022) ........................ 21

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792, 802-05 (1973) ........................................ 14, 36, 41

*Meinecke v. H&R Block of Houston*,
  66 F.3d 77, 81 (5th Cir. 1995) ................................................... 19

*Melgar v. T.B. Butler Publ'g Co., Inc.*,
  931 F.3d 375, 379 (5th Cir. 2019) .............................................. 26

*Nat'l R.R. Passenger Corp. v. Morgan*,
  536 U.S. 101, 109 (2002) ..................................................... passim

*Nola Spice Designs, LLC v. Haydel Enter., Inc.*,
  783 F.3d 527, 536 (5th Cir. 2015) ................................................ 19

*Owens v. Sec'y of Army*,
  354 Fed. Appx. 156, 158 (5th Cir.2009) (per curiam) ................................ 24

*Perkins v. Starbucks Corp.*,
  No. 4:21-cv-4189, 2022 WL 17069145 (S.D. Tex. Nov. 17, 2022) .............. 27

*Procter & Gamble Co. v. Amway Corp.*,
  376 F.3d 496, 499 n.1 (5th Cir. 2004)................................................... 23

*Raborn v. Inpatient Mgmt. Partners Inc.*,
  352 Fed. Appx. 881, 883 (5th Cir. 2009) ........................................ 22, 46, 47

*Ragas v. Tenn. Gas Pipeline Co.*,
  136 F.3d 455, 458 (5th Cir. 1998) .......................................................20, 31

*Roy v. City of Monroe*,
  950 F.3d 245, 251 (5th Cir. 2020) ............................................. 23

*Rui Yang v. Holder,*
   664 F.3d 580, 589 (5th Cir. 2011) ........................................................ 21

*Sacks v. Texas S. Univ.,*
   83 F.4th 340, 347 (5th Cir. 2023) ........................................................ 33

*Sotonwa v. Collins,*
   No. 24-11043, 2025 WL 2222730 (5th Cir. Aug. 5, 2025) .......................... 20

*Stanley v. Univ. of Tex. Med. Branch, Galveston, TX,*
   425 F. Supp. 2d 816, 822 (S.D. Tex. 2003) ........................................... 27

*Stewart v. Miss. Transp. Com'n,*
   586 F.3d 321, 331 (5th Cir. 2009) ........................................................ 39

*Taylor v. Books A Million, Inc.,*
   296 F.3d 376, 379 (5th Cir. 2002) ........................................................ 30

*Teamah v. Applied Materials, Inc.,*
   715 Fed. Appx. 343, 345 (5th Cir. 2017) ............................................... 26

*Tejero v. Portfolio Recovery Associates, L.L.C.,*
   955 F.3d 453, 463 (5th Cir. 2020) ........................................................ 45

*United States v. Anderson,*
   160 F.3d 231, 233 (5th Cir. 1998) ........................................................ 21

*United States v. Wilkes,*
   20 F.3d 651, 653 (5th Cir.1994) (per curiam) ........................................ 24

*Univ. of Tex. Southwestern Med. Ctr. v. Nassar,*
   570 U.S. 338, 362 (2013) .................................................................... 40

*Vann v. City of Southaven,*
   884 F.3d 307, 309 (5th Cir. 2018) ........................................................ 18

*Washington v. Allstate Ins. Co.,*
   901 F.2d 1281, 1286 (5th Cir. 1990) ..................................................... 20

*Willis v. Cleco Corp.,*
   749 F.3d 314, 317 (5th Cir. 2014) ........................................... 20, 31, 35

5

*Withrow v. Larkin,*
   421 U.S. 35, 46 (1975) ................................................................ 44

*Yohey v. Collins,*
   985 F.2d 222, 224–25 (5th Cir. 1993) ........................................ 21

**Statutes**

28 U.S.C. § 144(b)(1) .................................................................... 21

28 U.S.C. § 455(a) .......................................................... 21, 46, 47

29 U.S.C. § 626(d)(1) .......................................................... passim

42 U.S.C. § 12117(a) ..................................................................... 25

42 U.S.C. § 2000e-5(e)(1) .................................................... passim

Age Discrimination in Employment Act of 1967 ("ADEA") ................. passim

Americans with Disabilities Act ("ADA") .......................................... passim

Title VII of the Civil Rights Act of 1964 ("Title VII") .......................... passim

**Rules**

29 C.F.R. § 1601.12(a)(3) ............................................................. 26

Fed. R. App. P. 28(a)(6) ........................................................... 2, 22

Fed. R. App. P. 28(a)(7) ............................................................... 22

Fed. R. App. P. 28(a)(8)(A ........................................................... 23

Fed. R. App. P. 28(a)(9) ............................................................... 22

FED. R. CIV. P. 56(a) ..................................................................... 18

Federal Rule of Appellate Procedure 28 ........................................ 22

Federal Rule of Appellate Procedure 28(b)(3) ................................. 3

Fifth Circuit Rule 28.2.2 ............................................................... 22

To the Honorable Fifth Circuit Court of Appeals:

This is an employment discrimination lawsuit without any proof of discrimination, because there was none.

Plaintiff/Appellant Valerie Prevost, *pro se*, is a former employee of Defendant/Appellee City of Houston (the "City"). Prevost alleged claims against the City for discrimination based on her physical disability, age, and religion, as well as unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act ("ADA"), and the Age Discrimination in Employment Act of 1967 ("ADEA"). For the reasons detailed below, the City was properly awarded summary judgment on all of Prevost's claims.

Prevost complains that she was discriminated against—based on her age and physical disability—because the City changed its policy and "denied" her husband's ability to drive through the facility gate and pick her up at the building door. But the City repeatedly told her that her husband's gate access could continue after she provided the vehicle and identification information required under new security protocols that applied to everyone. Prevost refused to do this.

Prevost voluntarily announced her retirement and then continued to work at the City for another three months. But now she complains of constructive discharge.

Prevost complains of several other slights and disappointments, but failed to include any of them in her EEOC Charge. Prevost also failed to timely file her Charge in order to seek relief as to other such claims.

The district court properly granted the City's Motion for Summary Judgment, based on a lack of evidence supporting Prevost's claims and specific evidence that served as a bar to them. Moreover, the district court was fair and supportive to Prevost, a *pro se* litigant.

On appeal, Prevost offers only a single citation to evidence and repeated arguments that have no basis in law or fact. Consequently, this Court should affirm the district court's judgment.

### Re-Statement of the Case

Prevost's Statement of the Case, provided in Appellant's Brief, includes multiple assertions of fact with no citations to the Record.[1] *See* Appellants' Brief, pp. 32–58; *see also* FED. R. APP. P. 28(a)(6) (appellant's brief must contain a concise statement of case setting out facts relevant to issues submitted for review, with appropriate record references). Additionally, Prevost's Statement of the Case contains multiple instances of improper argument and/or conclusions of law. *See* Appellee's Brief, pp. 32–35; *see also* FED. R. APP. P. 28(a)(6).

---

[1] The entirety of Prevost's Statement of the Case contains only one citation to the appellate record. *See* Appellant's Brief, p. 32.

8

Pursuant to Federal Rule of Appellate Procedure 28(b)(3), the City asks this Court to disregard Prevost's Statement of the Case, in favor of the alternative provide below.

## Factual Background

### A.    The City has strict policies of non-discrimination and non-retaliation.

The City's Code of Ordinances and Executive Order 1-50 strictly prohibit discrimination in employment and employment opportunities on the basis of any protected category, including but not limited to, race, religion, disability, and age. ROA.1723–29. The City also prohibits retaliation against anyone for reporting prohibited conduct, assisting in making a prohibited-conduct complaint, cooperating in prohibited conduct, or otherwise opposing conduct in violation of any Federal, State, or local laws or ordinances, or City anti-discrimination policies. ROA.1726–27. The City's Office of Inspector General ("OIG") is tasked with investigating allegations of misconduct by City employees, including violations of E.O. 1-50. ROA.1730–38.[2]

### B.    Prevost moves offices.

Plaintiff/Appellant Valerie Prevost was employed as an administrative specialist with the City's Office of Emergency Management ("OEM").

---

[2] For the sake of brevity, Appellees the City of Houston, Legal Department Labor and Employment are collectively referenced herein as the "City".

ROA.1750. At all relevant times, she worked at the Houston Emergency Center ("HEC") building at 5320 N. Shepherd Dr. ROA.1751.

Prior to 2020, Valerie Prevost worked in office #2067, which was in a long hallway. ROA.1750, 1812. During the COVID-19 pandemic, another City employee—Thomas Pastrano—moved to office #2087, that is reachable through a big meeting room called the Activation Room. Later, OEM Deputy Director Nikea Bradley, Prevost's direct supervisor at the time, initiated construction to convert shared offices into to split offices to gain a couple of extra offices that the Office of Emergency Management needed in the HEC building. ROA.1751, 1812. Office #2067 was converted to two offices: 2067 and 2067A. During the construction, Prevost followed Pastrano into office #2087, which had two modular furniture workstations. ROA.1750, 1812.

## C.    Prevost is non-selected for a promotion in early 2021.

In early 2021, Prevost's direct supervisor was Vlad Ibarra. ROA.1743–44, 1761, 1763. In February 2021, Prevost applied for a position as a Grant Administrator, but she was not selected for the position. ROA.1744, 1761, 1814–16. On March 26, 2021, Prevost filed a grievance alleging that she was not interviewed or selected for the position due to her age and disability. ROA.1818. Because she had raised allegations of discrimination, the grievance was referred to the City's OIG, which opened an investigation. ROA.1830.

**D.     Prevost has a progressive corrective action write-up.**

On April 12, 2021, Ibarra met with Prevost to discuss what he described as "the cancellation of our quarterly goals meeting and the confrontational email tones displayed" by her. ROA.1801–03. Among other things, Ibarra took issue with Prevost "bringing the 'Lord Jesus Christ'" into their performance discussions. ROA.1801–03. He drafted a Performance Improvement Discussion ("PID") worksheet dated April 22, 2021, but did not sign it. ROA.1763, 1804. Prevost responded that she had a First Amendment right to talk about her religious beliefs. Ibarra then agreed to issue a new PID that removed the reference to religion. ROA.1763, 1804. This was done on April 26, 2021. ROA.1805. The April 26, 2021 PID worksheet with no reference to religion was signed by Ibarra and by witness Mark Rayne. ROA.1805.

Prevost added to her pending OIG complaint by alleging a claim against Ibarra for religious discrimination. ROA.1830. The PID worksheets were the last thing that Ibarra did which Prevost believed to be religious discrimination, and she is not making a claim of religious discrimination against anyone else in this lawsuit. ROA.1764–65.

**E.     OIG and the Grievance Committee find the selection decision was well-supported.**

The evidence reviewed by OIG in its investigation revealed that the successful candidate for the Grant Administrator position held a bachelor's

degree and a master's degree, unlike Prevost, who holds a GED. ROA.1739–40, 1830. Additionally, the successful candidate had several years of experience as a Senior Project Manager, and completed a post graduate program for project management, for which preference is given in the position. ROA.1814–16, 1827–29. The successful candidate also had experience in grant management and training management, and supervising five direct reports. ROA.1827–29.

"Based on the differences between the educational credentials and the professional experience between [Prevost and the successful candidate], OIG did not sustain [Prevost's] allegations" that she was non selected because of her age or disability. ROA.1830. "OIG also did not find a violation of the prohibitions against religious discrimination." ROA.1830. Prevost was advised of OIG's findings in a letter dated August 20, 2021. ROA.1830. The letter also informed Prevost that, if she wanted to apply for a disability accommodation under the ADA, she should contact Joe Laud, the Administrative Manager for OEM, to request a Medical Questionnaire. ROA.1830. She did not do so.

With the closure of the investigation into discrimination, Prevost's grievance regarding the non-selection decision continued through the City's multi-step review process. At the final step, the Grievance Review Committee held a hearing on January 12, 2022. ROA.1744, 1778–79. The Committee found "that the robust employment market created an applicant pool of over-qualified

candidates," and that the four candidates who had been selected for interviews were "stellar." ROA.1778–79. As a result, the Committee ruled in favor of the Department Head with respect to Prevost's grievance. ROA.1778–79. The City's Human Resources Department advised Prevost of the Committee's ruling by letter dated January 20, 2022. ROA.1744, 1778–79. After she received the grievance committee's ruling, Prevost did not file a claim with the Equal Employment Opportunity Commission ("EEOC") or take any other action regarding her request for a promotion or job reclassification. ROA.1744–45.

## F. Prevost fell two times in 2021.

At some point, the Activation Room near Prevost's and Pastrano's work stations developed a leak in the ceiling. ROA.1746. On June 10, 2021, Prevost fell at work, allegedly because of wet carpet outside of her office door ROA.1746. She complains that Ibarra did not report the fall at the time. ROA.1761.

In September 2021, due to a recent security breach, OEM implemented stronger safety protocols for entrance to the HEC facility. ROA.1787–92, 1796–1800. On September 23, 2021, Joe Laud sent Prevost an email stating:

> Since your husband picks up/drops you off to work, I need the following info for guards' references:
> - Husband's name/license number;
> - Picture copies of yours and husband's IDs;.

13

- Vehicle: make/model/color, license plate (list all vehicles that may be used)

ROA.1755, 1791–92.

Prevost refused to provide this information, arguing that she did not need to do so because she had been previously vetted and approved in the past to have her husband go through the gate. ROA.1755, 1791. Prevost told Laud that she would not provide her information, allegedly due to being a victim of identity theft, and that she would try to walk to the gate. ROA.1756, 1791.

On October 8, 2021, Prevost fell when she was walking from the OEM building to the gate where her husband picked her up. ROA.1748. On the day she fell, her husband did provide the necessary information to security and was granted access to drive through the front gate to pick her up. ROA.1796–1800.

According to emails produced by Prevost, on November 3, 2021 she told Laud, "There is no further interest in clearance." She asked him to "please discard" her security information. ROA.1757, 1793.

On November 7, 2021, Prevost complained to Robert Mock, the Director of the HEC, that Laud had created a harassing, discriminatory and/or retaliatory environment by denying her gate access despite her mobility impairment. ROA.1806–07. Either Director Mock or George Buenik—another OEM employee—immediately forwarded the complaint to OIG for investigation. ROA.1766, 1806–07. OIG investigated the complaint and advised

14

Prevost on November 15, 2021 that, if she was seeking an ADA accommodation with respect to gate access, she should submit a completed medical questionnaire. ROA.1808. Prevost declined to do so.

**G.     Prevost complains again about gate access.**

On January 23, 2022, Prevost renewed her complaint to Director Mock about not having gate access for her husband to drop her off at the front door of the HEC. ROA.1758, 1798–99. The next day, Mock responded:

> As communicated to you several times in the last 3 or 4 months, including verbally by me in my office, the enhanced security protocols for visitors entering the HEC property with a vehicle to pick up HEC employees is due to recent improper incursions we have experienced at HEC. This is for the safety of all employees working in the HEC, a recognized high security facility. As highlighted in the policy attached by you, HEC 100-4 Building Entrance Security, *any visitor that has vehicle information and driver information on file can be approved to enter at the vehicle entrance gate for pickup of an employee* <u>*once they properly identify themselves to gate personnel*</u>. Your husband or anyone else will be allowed to pick you up inside the gate as long as these parameters are continually met. I urge you to coordinate with Joe Laud to successfully coordinate the required parameters.

ROA.1758, 1798. Mock also informed Prevost that *no ADA accommodation was required* to allow someone to pick her up inside the gate. ROA.1758, 1798.

Later, Mock clarified his prior statement:

> [O]n October 8, 2021, your transportation followed all protocols, provided identification, and was granted access to drive through the front gate to pick you up after your urgent situation. Since that time, the only component of the gate admission process that is required would be for him to provide identification each time he enters the

15

parking lot to pick you up. As with all visitors seeking to enter/drive on to the HEC property they must present identification for verification and logging in. Since all other policy requirements have been met, *your transportation will be allowed to drive through the gate to pick you up if identification is presented at time of entry*.

ROA.1759, 1797 (italics and underlining emphasis added).

Prevost is not aware of any comparator employee who was not disabled and who was able to be dropped off near the door without providing the driver's license of the driver of the car that dropped them off. ROA.1749, 1757.

## H.    Prevost has trouble with emails.

During her employment with the City, Prevost occasionally had trouble recovering emails and other documents which she believed to be improperly deleted. ROA.1768–70. She was able to recover the documents, but then they allegedly would delete again. ROA.1768–71. Prevost has expressed a belief that somebody "manipulated, changed or deleted" her emails. ROA.1758. However, she was not able to identify the person responsible. ROA.1758.

Prevost did not receive any workplace discipline or corrective action for not being able to retrieve the documents deleted from her work computer. ROA.1770. Her work process was not slowed down by the deletions, because she "figured out ways to get it down." ROA.1770. She kept copies of all her key documents. ROA.1771.

16

Prevost's complaints of deleted emails and documents were investigated by the City's Chief Information Security Officer and his team. ROA.1833. No evidence of any third-party deletion was discovered at the time of the investigation, but user error was discovered. ROA.1833.

## I.    Prevost resigns from the City and files an EEOC charge.

On May 22, 2022, Prevost submitted notice of her intention to retire from employment with the City. ROA.1742–43, 1777. Her requested date of retirement was three months later, August 31, 2022. ROA.1777. Prevost retired both because of her belief that the City had been discriminating against her, and also because her health was declining. ROA.1742–43, 1777. The Social Security Administration certified Ms. Prevost as 100% disabled, effective August 25, 2022, based on the opinion of her evaluating neurologist, Dr. Fayaz, that she has been unable to perform work in the local economy as of that date. ROA.1741.

Prevost filed a Charge of Discrimination with the EEOC on December 22, 2022. ROA.1742, 1775. In her Charge, Prevost complained that she was unable to be dropped off at the front of the OEM building and alleged that she fell as a result. ROA.1775. She further alleged that she was "forced to retire" to prevent further injury. ROA.1775. She contended that these alleged actions constituted retaliation and/or discrimination by the City, in violation of the ADA, ADEA,

and Title VII. ROA.1775. Prevost filed an Amended Charge on January 10, 2023, but her allegations remained exactly the same. ROA.1742, 1776. The EEOC closed its investigation and issued a Notice of Right to Sue on July 24, 2023. ROA.18. Prevost then filed this lawsuit. ROA.15–23.

**Procedural Background**

**A.   Prevost's Complaint**

Prevost, acting *pro se*, initiated the underlying lawsuit by filing her Employment Discrimination Complaint against the City on October 19, 2023. ROA.15–23. Prevost alleged claims for employment discrimination based on her disability status, her age, and her religious beliefs, as well as a claim for retaliation. ROA.15–17.

The City answered the suit on December 4, 2023, denying liability as alleged while also asserting governmental immunity. ROA.38–42. The City also asserted that Prevost had failed to exhaust her administrative remedies. ROA.40.

**B.   Conferences with the District Court & Judicial Bias Complaint**

Through an Order dated November 15, 2023, District Judge Charles Eskridge referred the case to United States Magistrate Judge Christina A. Bryan, and instructed the parties to advise whether they would consent to Judge Bryan's

18

jurisdiction over the case. ROA.30. Prevost later communicated that she did *not* consent to Judge Bryan's jurisdiction. ROA.45.

On February 12, 2024, Judge Bryan held an initial conference in which she explained her role, and that, even though Judge Eskridge would preside over any trial of the suit, she would be handling all pre-trial matters. ROA.35–37, 3700–12. The court also discussed that all of Prevost's discovery requests should be served upon the City's counsel, rather than serving discovery subpoenas upon City employees directly. ROA.3706–10. Judge Bryan asked Prevost if she understood how discovery in the suit should proceed, and Prevost replied, "Understood, Judge." ROA.3710. Judge Bryan was generally kind and patient with Prevost throughout the hearing. ROA.3700–12.

On October 4, 2024, the district court held a status conference to address some of Prevost's concerns. ROA.3714–56. At that time, Judge Bryan acknowledged that Prevost had not consented to the case being heard by a magistrate. ROA.3716. But Judge Bryan reminded Prevost of her role in handling all pre-trial matters, and that Judge Eskridge would review any recommendations on dispositive motions. ROA.3716–17. The court also addressed questions about the discovery process and the City's motion for protection, filed in response to Prevost's continuing attempts to obtain discovery directly from City employees, rather than through the City's counsel.

ROA.3718–22. At the end of the discussion, Judge Bryan asked Prevost if the court's explanations made sense to her, and she replied, "Yes, Your Honor." ROA.3722. Otherwise, Judge Bryan—again—was generally kind and patient with Prevost throughout the hearing. ROA.3715–56.

On January 3, 2025, Prevost filed a "Complaint about Judicial Misconduct in Case by Magistrate Judge Christina A. Bryan" with the Chief Judge of the Southern District of Texas. ROA.1379–82. Specifically, Prevost accused Judge Bryan of being biased and acting in a prejudicial manner against Prevost. ROA.1379–80. She also attached an Emergency Motion for Recusal and Affidavit of Bias and Prejudice against Judge Bryan. ROA.1383–1404. Generally, Prevost complained of her perceived bias based upon unfavorable rulings made by Judge Bryan during the course of the case. ROA.1379–1404.

## C.    Motions for Summary Judgment

On February 6, 2025, the City filed its Motion for Summary Judgment arguing that: (1) Prevost failed to exhaust all administrative remedies; (2) Prevost cannot produce evidence to show constructive discharge; and (3) Prevost cannot produce evidence capable of supporting either discrimination or retaliation claims under the *McDonnell Douglas* burden-shifting framework. ROA.1697–1833.

Later that same day, Prevost filed her own Motion for Summary Judgment. ROA.1834–2194. Both the City and Prevost filed responses to each other's summary judgment motions, followed by replies in support of the summary judgment motions. ROA.2220–2455 (Prevost's Response to City's MSJ), 2460–64 (City's Reply), 2737–45 (City's Response to Prevost's MSJ), 2778–91 (Prevost's Reply).

On April 24, 2025, Prevost filed an Amended Emergency Motion for Recusal, again seeking the recusal of Judge Bryan based upon a litany complaints, including unfavorable rulings made by Judge Bryan during the course of the case. ROA.2816.

On May 20, 2025, the district court denied Prevost's Emergency Motion for Recusal. ROA.2942–43.

Also on May 20, 2025, Judge Bryan issued her Memorandum and Recommendation (the "Recommendation"), granting the City's Motion for Summary Judgment while denying Prevost's Motion for Summary Judgment. ROA.2944–63.

Prevost filed numerous Objections to the Recommendation, based upon her prior arguments.[3] ROA.2964–89.

---

[3] The City filed an Objection to the Recommendation, citing one factual inaccuracy concerning the reporting relationship between Prevost and another City employee. ROA.3002–5. Otherwise the City accepted the Recommendation in full.

On June 20, 2025, Judge Eskridge signed an Order Adopting Memorandum and Recommendation, granting the City's Motion for Summary Judgment[4] while denying Prevost's Motion for Summary Judgment. ROA.3619–21. Later that same day, Judge Eskridge signed a Final Judgment, awarding summary judgment to the City and dismissing all of Prevost's claims. ROA.3622.

This appeal followed. ROA.3623.

## Summary of the Argument

The district court correctly granted the City's Motion for Summary Judgment against Prevost's claims for employment discrimination. Prevost's many complaints are procedurally improper, untimely, or simply without supporting evidence.

Prevost's appellate arguments generally avoid analysis of the district court's Recommendations, and instead restate many of Prevost's old complaints from her pleadings and motions. Most of Prevost's arguments are without citation to either evidence or legal authority. To the extent that Prevost mentions evidence, the references are general, without citation to any of the hundreds of pages filed in the district court or in this Court. Thus, Prevost's arguments are

---

[4] The district court's Order sustained the City's objection and incorporated the proposed revision by reference. ROA.3620.

largely unsupported.

Initially, Prevost's pre-suit complaint to the EEOC referenced *only* one claim—her allegation that the City denied her ability to be picked up from work at the front door of the building due to her physical disability. Moreover, Prevost's EEOC charge also barred claims for any allegedly unlawful acts occurring before February 22, 2022. Consequently, all of Prevost's claims except for the gate access and constructive discharge claims are barred on the basis of failing to exhaust administrative remedies or untimeliness.

Prevost failed to provide any evidence to support her of constructive discharge. The evidence undisputedly reveals that Prevost was denied gate access entirely because of her refusal to comply with new security protocol that applied equally to everyone. As the district court correctly concluded, the change in access happened in spite of Prevost's status, not because of it.

Prevost also failed to provide evidence capable of demonstrating a fact issue as to either an unlawfully discriminatory adverse employment action, or that the City's legitimate explanation for such an action was pretextual. Specifically, there was no evidence to create a fact issue concerning the City's treatment of Prevost that was *caused by* her protective status. Nor was there any evidence to support the argument that the City's new security policy was pretextual.

Finally, Prevost's arguments concerning judicial bias by the district court are entirely without merit. The transcript of the initial conference and status conference make clear that Judge Bryan was empathetic, patient, and fair, going beyond what was even required in her attempts to assist Prevost in navigating the challenge of pursuing pre-trial litigation against the City. As this Court has repeatedly held, the dismissal of Prevost's suit—by itself—does not demonstrate judicial bias.

For these and other reasons described below, the district court properly awarded summary judgment to the City against all of Prevost's claim, and that judgment should be affirmed.

## Argument

### I.    Standard of Review

#### A.    Rule 56 – Summary Judgment

The standard of review on summary judgment is *de novo*. *Favela v. Collier*, 91 F.4th 1210, 1212 (5th Cir. 2024); *Davidson v. Fairchild Controls Corp.*, 882 F.3d 180, 184 (5th Cir. 2018). Summary judgment is warranted when the evidence shows no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Vann v. City of Southaven*, 884 F.3d 307, 309 (5th Cir. 2018); *Brown v. City of Houston*, 337 F.3d 539, 540–41 (5th Cir. 2003). Facts are considered material if they might

affect the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 247–248 (1986)).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the records which it believes demonstrates the absence of a genuine issue of material fact." *Nola Spice Designs, LLC v. Haydel Enter., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (internal citation and alteration omitted). The movant can meet this initial burden by pointing to "the absence of evidence and thereby shift to the non-movant the burden of demonstrating that there is an issue of material fact warranting trial." *Kim v. Hospira, Inc.*, 709 F. App'x 287, 288 (5th Cir. 2018) (internal quotation and alteration omitted).

Once the burden shifts, the non-movant must show with "significant probative evidence" that a genuine issue of material fact exists. *Hamilton v. Seque Software*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994). While all reasonable inferences are to be resolved in favor of the non-moving party, the non-movant must show more than "some metaphysical doubt as to material facts." *Meinecke v. H&R Block of Houston*, 66 F.3d 77, 81 (5th Cir. 1995) "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown*, 337 F.3d at 541. Likewise, affidavits or deposition testimony

25

asserting ultimate or conclusory facts and conclusions of law are also insufficient to raise a genuine issue of fact. *Clark v. America's Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997).

Further, the non-movant must identify specific evidence in the record and articulate how that evidence supports the specific claim. *Infant v. Law Office of Joseph Onwuteaka, P.C.*, 735 F. App'x 839, 843 (5th Cir. 2018). "Rule 56 does not impose upon the district court [or the court of appeals] a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (bracket in original); *see also Sotonwa v. Collins*, No. 24-11043, 2025 WL 2222730, at *4 (5th Cir. Aug. 5, 2025) (same).

Where the record, taken as a whole, indicates that no reasonable jury could return a verdict for the non-movant, there is no genuine issue for trial. *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1286 (5th Cir. 1990).

### B.    *Pro Se* Litigants

The Fifth Circuit construes the claims of a *pro se* litigant liberally, but "a *pro se* litigant 'must still brief the issues and reasonably comply with' Rule 28 of the Federal Rules of Appellate Procedure." *Fosu v. Garland*, 36 F.4th 634, 639 (5th Cir. 2022) (per curiam) (quoting *Rui Yang v. Holder*, 664 F.3d 580, 589 (5th

26

Cir. 2011)). "[I]f a *pro se* plaintiff fails to argue claims in the body of his brief, those claims are considered abandoned." *Davis v. Lumpkin*, 35 F.4th 958, 962 n.1 (5th Cir. 2022) (citing *Yohey v. Collins*, 985 F.2d 222, 224–25 (5th Cir. 1993)).

## C.    Recusal

A district court's denial of a motion for recusal is reviewed for abuse of discretion. *Matter of Assadi*, No. 22-50452, 2022 WL 17819599, at *1 (5th Cir. Dec. 20, 2022) (citing *United States v. Anderson*, 160 F.3d 231, 233 (5th Cir. 1998)).

The requirements of 28 U.S.C. § 455 apply to "any justice, judge, or magistrate judge of the United States . . .." This statute provides that a judge should recuse herself in any proceeding in which there is *reasonable* question to her impartiality. 28 U.S.C. § 455(a) (emphasis added). If a judge has a personal bias or prejudice concerning a party, the judge should qualify herself. *See* 28 U.S.C. § 144(b)(1). If a party moves to recuse a judge on the grounds of bias and prejudice, the bias or prejudice should stem from extrajudicial sources. *Andrade v. Chojnacki*, 338 F.3d 448, 455 (5th Cir. 2003). When considering a judge's impartiality under 28 U.S.C. 455(a), the court must consider whether a reasonable and objective person, rather than the hypersensitive, cynical, and suspicious person, knowing all the facts, would have doubts concerning the

judge's impartiality. *Raborn v. Inpatient Mgmt. Partners Inc.*, 352 Fed. Appx. 881, 883 (5th Cir. 2009).

## II.     PREVOST'S APPELLANT'S BRIEF FAILS TO SATISFY THE FEDERAL RULES OF APPELLATE PROCEDURE OR THE LOCAL RULES OF THIS CIRCUIT.

Federal Rule of Appellate Procedure 28 requires an appellant's brief to contain, *inter alia*, "a statement of facts relevant to the issues submitted for review with appropriate references to the record," FED. R. APP. P. 28(a)(7), as well as an argument section comprised of "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies" and "a concise statement of the applicable standard of review." FED. R. APP. P. 28(a)(9). Further, Fifth Circuit Rule 28.2.2 more strictly requires "[e]very assertion in briefs regarding matter in the record [to] be supported by a reference to the page number of the original record." 5TH CIR. R. 28.2.2.

As discussed *supra*, Prevost's Statement of the Case fails to comply with the Federal Rules of Appellate Procedure and this Court's own Rules. *See supra*, p. 2; Appellant's Brief, pp. 32–58. Despite the plain requirements of Rule 28(a)(6), and Fifth Circuit Rule 28.2.2, Prevost's Statement of the Case contains multiple statements purporting to be factual, while including only *one* citation, which referenced the original ECF filing numbers and not the appellate record.

*See* Appellant's Brief, pp. 32–58. Similarly, while Prevost's Argument section[5] contains statements of alleged factual content (*see* Appellant's Brief, pp. 12–33, 57–63), this section fails to include *even a single citation* to the Record. *See id*.

Prevost's Argument section also fails to adequately state "appellant's contentions and the reasons for them, with citations to the … parts of the record on which the appellant relies." FED. R. APP. P. 28(a)(8)(A). Prevost's Argument makes no attempt to apply her legal argument to the allegations of her Complaint, and—as stated above—fails to include even a single citation to the Record. *See* Appellant's Brief, pp. 12–33, 57–63. At most, Prevost asserts several general legal theories and then asks this Court to apply them on her behalf. *See id*. Thus, Prevost has failed to satisfy Rule 28. *See Roy v. City of Monroe*, 950 F.3d 245, 251 (5th Cir. 2020) (quoting *Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 n.1 (5th Cir. 2004)) ("Failure adequately to brief an issue on appeal constitutes waiver of that argument.").

This Court has previously stated that "[a]lthough we liberally construe *pro se* briefs, such litigants must still brief the issues and reasonably comply with the standards of Rule 28 in order to preserve them." *Davison v. Huntington Ingalls,*

---

[5] Prevost's Appellant's Brief contains a section titled "Statement of Grounds for Appeal", but this section contains the primary arguments supporting Prevost's appeal. *See* Appellant's Brief, pp. 12–33. The "Argument" section, essentially summarizes the arguments presented above it. *See id.*, pp. 57–63.

*Inc.*, 712 F.3d 884, 885 (5th Cir. 2013) (quoting *Clark v. Waters*, 407 Fed. Appx. 794, 796 (5th Cir.2011)). "Failure to comply with the rules of this court regarding the contents of briefs can be grounds for dismissing a party's claims." *Id.* (quoting *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir.1994) (per curiam)). Dismissal is warranted where the non-compliance is not merely "technical or stylistic," but rather is so "fundamental" that it prevents the court from engaging in meaningful review. *Id.* (quoting *Owens v. Sec'y of Army*, 354 Fed. Appx. 156, 158 (5th Cir.2009) (per curiam) (dismissing appeal for want of prosecution on the ground that appellant's brief "lacks any argument in support of the issues that it raises")); *see also Clark v. Waters*, 407 Fed.Appx. 794, 796 (5th Cir.2011) (per curiam) (affirming dismissal on ground that appellant's brief "is grossly non-compliant with Rule 28").

Prevost's Appellant's Brief fails to meet the requirements of the Federal Rules of Appellate Procedure, as well as the Fifth Circuit Court of Appeals' Rules. On this basis alone, her appeal should be dismissed.

## III. THE DISTRICT COURT CORRECTLY BARRED MOST OF PREVOST'S CLAIMS FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES.

Almost all of Prevost's discrimination claims brought under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 2008 ("ADA") as amended, and the Age Discrimination in Employment Act of 1967 ("ADEA") fail due to Prevost's failure to exhaust the required administrative

remedies prior to filing suit. Specifically, Prevost failed to exhaust administrative remedies with regard to her claims for: (1) age discrimination related to alleged failure to promote/reclassify or hire Prevost for the Grant Administrator position; (2) religious discrimination related to alleged comments included in a performance review; (3) retaliation related to alleged deletion of emails; and (4) disability discrimination related to her worksite location.

This Court has held that a plaintiff alleging workplace discrimination must exhaust his administrative remedies before they may sue under Title VII, ADEA, or the TCHRA. *Castro v. Tex. Dep't of Crim. Justice*, 541 F. App'x 374, 379 (5th Cir. 2013). This Court has also determined that plaintiffs failed to exhaust their administrative remedies for their Title VII and ADEA claims, when their claims could not be reasonably expected to grow out of the charge of discrimination. *Jefferson v. Christus St. Joseph Hosp.*, 374 F. App'x 485, 490 (5th Cir. 2010) (citation omitted) (applying Title VII and ADEA), *see also Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993) (applying Title VII).

"The ADA has adopted Title VII's procedure for filing charges in employment related claims." *Dade v. Sw. Bell Tel. Co.*, 942 F. Supp. 312, 317 (S.D. Tex. 1996); *and see* 42 U.S.C. § 12117(a); *Garcia v. Penske Logistics, LLC*, 631 Fed. Appx. 204, 207 (5th Cir. 2015). These statutes both require plaintiffs who wish to file suit in federal court to first exhaust their administrative remedies

by timely filing a charge with the EEOC. *See Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 337 (5th Cir. 2021) (Title VII); *Dade*, 942 F. Supp. at 17 (ADA). Likewise, a claimant under the ADEA must also exhaust her administrative remedies by first filing a timely EEOC charge. 29 U.S.C. § 626(d); *Teamah v. Applied Materials, Inc.*, 715 Fed. Appx. 343, 345 (5th Cir. 2017).

"[T]he crucial element of a charge of discrimination is the factual statement contained therein." *Melgar v. T.B. Butler Publ'g Co., Inc.*, 931 F.3d 375, 379 (5th Cir. 2019) (citation and internal quotation marks omitted). This Court has stated that the code of federal "regulations require a 'clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices.'" *Id.* at 380 (quoting 29 C.F.R. § 1601.12(a)(3)). When the factual allegations in an EEOC charge are insufficient to support that an EEOC investigation could be reasonably expected to grow out of the charge of investigation, plaintiffs have failed to exhaust their administrative remedies, thereby affirming dismissal of plaintiffs' claims. *See Melgar*, 931 F.3d at 380; *see also Castro*, 541 F. App'x at 379–80; *Fine*, 995 F.2d at 577–78.

The requirement of administrative exhaustion "relates to a key purpose of an employment discrimination charge, which is to give the employer notice of the existence and general substance of the discrimination allegations." *Ernst*, 1 F.4th at 337. Thus, a claim is not exhausted unless it arises out of the plaintiff's

EEOC charge. *Id.* While *pro se* employees are given some amount of leeway, a "plaintiff's charge should not be so liberally construed that a plaintiff does not need to state the basic facts that make up [her] discrimination claim because a plaintiff does not need legal assistance to merely articulate the facts underlying [her] claims." *Stanley v. Univ. of Tex. Med. Branch, Galveston, TX*, 425 F. Supp. 2d 816, 822 (S.D. Tex. 2003). Allegations that were not raised in the EEOC charge cannot be brought for the first time in federal court. *See Ernst*, at 338–39 (affirming dismissal of claims for sex discrimination and retaliation when only race discrimination was alleged in the charge).

### A.    The basic facts underlying Prevost's claims were not alleged in her EEOC charge.

Previously, this Court and others have dismissed or affirmed dismissals of claims that were alleged in the plaintiffs' complaints but the factual basis for the claims were absent from the EEOC charges. *See Fine*, 995 F.2d at 577-578; *Perkins v. Starbucks Corp.*, No. 4:21-cv-4189, 2022 WL 17069145, at *7-8 (S.D. Tex. Nov. 17, 2022). In *Fine v. GAF Chemical Corporation*, this Court affirmed dismissal of plaintiff's claims stemming from her employer's failure to promote her to two positions in October and November 1990, when her EEOC charge only alleged an application for a position in February 1990. *See Fine*, 995 F.2d at 577–78. The Court reasoned that because plaintiff's charge drew the EEOC's attention to an application she made in February 1990 and referred to events

further in the past, that her claims regarding alleged discriminatory acts that occurred in in October and November 1990, could not reasonably be expected to be within the scope of the EEOC investigation. *Id.*

Although Prevost did file a Charge of Discrimination with the EEOC, the Charge only complained about the denial of gate access and her alleged "forced" resignation. ROA.1775–76. The Charge wholly fails to mention the other acts of alleged discrimination and/or retaliation that Prevost alleged in her Complaint. ROA.1775–76. Specifically, Prevost's EEOC Charge does not allege any facts related to the following claims: failure to interview/promote; discriminatory write-up; religious discrimination; isolation in an unsafe environment with a leaking roof; or deletion of emails and documents. ROA.16–17, 1775–76. Therefore, any cause of action based on these claims is barred for failure to exhaust administrative remedies. *See Ernst*, 1 F.4th at 339; *Stanley*, 425 F. Supp.2d at 822.

### B. Prevost's claims based on facts that occurred prior to February 25, 2022 are time-barred.

Additionally, and in the alternative, the majority of Prevost's claims are barred by the Title VII, ADA and ADEA administrative limitations period. These statutes mandate that a plaintiff must file her charge with the EEOC within 180 days after the alleged unlawful employment practice occurred, or within 300 days if the aggrieved person initially instituted proceedings with a

State or local agency. *See* 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002). A discrete retaliatory or discriminatory act is time barred if it is not filed within these time limits. *Id.*

Here, Prevost filed her charge with the EEOC and the Texas Workforce Commission Civil Rights Division on December 22, 2022. ROA.1775. Any discrete acts of discrimination or retaliation occurring more than 300 days prior to that date (e.g., before February 25, 2022) are time-barred. *See* 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1); *Morgan*, 536 U.S. at 109.

Almost all the acts of discrimination and retaliation alleged by Prevost purportedly occurred *prior* to February 25, 2022. ROA.16–17; *see also* Appellant's Brief, pp. 35–55. The move to a new cubicle, the performance improvement discussions, the alleged religious discrimination, both falls, and the non-selection decision all occurred *prior* to the statutory cut-off date. ROA.16–17; *see also* Appellant's Brief, pp. 35–55. Thus, all of Prevost's claims for discrimination and/or retaliation based on these acts are time-barred, and should be dismissed. *See* 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1); *Morgan*, 536 U.S. at 109.

**C.    Prevost failed to respond to the City's argument concerning exhaustion of administrative remedies in the district court.**

In the district court, Prevost failed to provide a substantive response to the exhaustion argument. ROA.2220–37. In fact, Prevost's Response to Defendant

City of Houston's Motion for Summary Judgment failed to address the issue of exhaustion of administrative remedies *at all*. ROA.2220–37. It was not until Prevost filed her Objection to Memorandum and Recommendation of Magistrate Judge Christina A. Bryan (Prevost's "Objection") that she attempted to address this issue. ROA.2980. In her Objection, Prevost argued that she had sufficiently exhausted all administrative remedies in the following manner:

> … by addressing concerns with various authorities, including management, the Director George Buenik of OEM-HEC, OIG, Human Resources, IT Director Lisa Kent, COH-Chris Mitchell, OEM managers, the IT Department David Reyes, filed Grievance Committee, HEC Deputy Director Robert Mock, former Mayor Turner, current Mayor Whitmire.

ROA.2980. However, these "authorities" are not sufficient to satisfy Prevost's burden to exhaust all administrative remedies according to the statues under which she seeks relief. *See* 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1); *Morgan*, 536 U.S. at 109. As the district court observed, "A plaintiff exhausts administrative remedies by filing a charge with the EEOC and receiving a right to sue letter. ROA.2953 (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002)).

Notably, Prevost's Objections wholly fail to address the untimeliness of her claims based on alleged acts occurring more than 300 days prior to the filing of her EEOC charge. ROA.2964–89.

Prevost failed to demonstrate a Charge concerning her other claims, and so they are barred for failure to exhaust administrative remedies. *See* 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1); *Morgan*, 536 U.S. at 109.

**D.    Prevost's arguments on appeal fail to demonstrate substantive exhaustion of administrative remedies.**

On appeal, Prevost again argues that she sufficiently exhausted administrative remedies, again relying upon the following:

> … emails to managers, letters to two mayors, HR reports, FBI email, Directors, Grievance meeting, Grievance committee, hearing report, etc., two mayors, City of Houston Cyber Chief, FBI email, Report to City of Houston information technology, report of administrator [who] had full access to Plaintiff's profile.

Appellant's Brief, p. 24. But Prevost fails to provide citations to any of the "evidence" upon which she purports to rely. *See id.*; *see also Willis*, 749 F.3d at 317 (quoting *Ragas*, 136 F.3d at 458) (courts have no duty "to sift through the record in search of evidence"). Moreover, none of the evidence described by Prevost includes the EEOC Charge required by the relevant statues. *See id.*; 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1); *Morgan*, 536 U.S. at 109.

Additionally, Prevost's Appellant's Brief—like her Objections in the district court—fails to address the untimeliness of her claims based on alleged acts occurring more than 300 days prior to the filing of her EEOC charge. *See* Appellant's Brief, *generally*.

Prevost demonstrably failed to exhaust all the administrative remedies *required by the relevant statutes*, except for her claim concerning the alleged denial of gate access and constructive discharge. ROA. 1775-76, 2953-55. Accordingly, Prevost's other claims—such as a purportedly denied promotion and religious discrimination—are denied for failure to exhaust administrative remedies. *See* 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1); *Morgan*, 536 U.S. at 109. Prevost's argument to the contrary fails.

## IV. THE DISTRICT COURT CORRECTLY DETERMINED THAT PREVOST FAILED TO DEMONSTRATE A VALID CLAIM FOR CONSTRUCTIVE DISCHARGE.

The only one of Prevost's claims that was properly before the district court is her alleged claim for constructive discharge. Prevost contends that she was forced to resign or retire for discriminatory or retaliatory reasons. The evidence does not support such a claim.

### A. The district court properly granted summary judgment against Prevost's constructive discharge claim.

Constructive discharge is an "aggravated form of discrimination" *Green v. Brennan*, 578 U.S. 547, 576 (2016) (Alito, J., concurring). To prove constructive discharge, a plaintiff must demonstrate that her working conditions were so intolerable that "a reasonable employee would have felt compelled to resign." *Id.* at 555 (majority opinion); see also *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 439–40 (5th Cir. 2005) (quoting *Landgraf v. USI Film Prods.*, 968 F.2d

427, 429–30 (5th Cir. 1992) (citation omitted)) (a claimant "must prove that 'working conditions would have been so difficult or unpleasant that a reasonable person in [her] shoes would have felt compelled to resign.'"). Significantly, constructive discharge requires ***a greater degree of harassment*** than that required to establish a hostile work environment claim. *Matherne v. Ruba Mgmt.*, 624 Fed. App'x 835, 841 (5th Cir. 2015) (per curiam) (citing *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998)). It is an objective standard. *See id.* at 576.

There must also be "proof of a causal link between the allegedly intolerable conditions and the resignation." *Id.* at 563. "The resigning employee bears the burden to prove constructive discharge." *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 342 (5th Cir. 2005)

To determine whether a reasonable person would feel compelled to resign, the Fifth Circuit considers where any of the following exist:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status].

*Sacks v. Texas S. Univ.*, 83 F.4th 340, 347 (5th Cir. 2023) (brackets orig.).

Here, there is no evidence or allegation of factors 1–5 or 7, and especially not after February 25, 2022. While Prevost alleged that she was subject to

39

harassment by an unspecified person who reportedly "manipulated" her emails after February 25, 2022, that allegation was never brought before the EEOC and is administratively barred. *See* 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1); *Morgan*, 536 U.S. at 109. Further, the acts alleged are not severe or pervasive enough that a reasonable employee in Prevost's place would have felt compelled to resign, since the alleged deletion of her emails did not affect her work performance in any way. *See Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001) ("Constructive discharge requires a greater degree of harassment than that required by a hostile environment claim."). Moreover, Prevost stayed at her position *for three months* after submitting her notice of resignation, which indicates that she was not compelled to immediately leave her position due to harassment. ROA.1742–43, 1777.

### B. Prevost failed to demonstrate a fact issue concerning constructive discharge.

In both her Response[6] to the City Motion for Summary Judgment and her Objections to the Magistrate's Recommendation, Prevost failed to direct the district court to *any* evidence demonstrating circumstances suggesting that "a reasonable employee would have felt compelled to resign." ROA.2220–37, 2978–80.

---

[6] Prevost's Response to the City's Motion for Summary Judgment did not mention constructive discharge *at all*. ROA.2220–37.

On appeal, Prevost relies upon a conclusory citation to authority defining constructive discharge, followed by general descriptions of purported evidence. *See* Appellant's Brief, pp. 37–38, 54–55. But Prevost provides neither any direct citation to her purported evidence, nor any analysis of how the supplied legal standard applies to such evidence.[7] *See id.* Consequently, there is no fact issue concerning Prevost's constructive discharge claim, and the City is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Vann*, 884 F.3d at 309.

Accordingly, the district court was correct in granting the City's Motion for Summary Judgment on Prevost's constructive discharge claim.

## V. THE DISTRICT COURT CORRECTLY DETERMINED THAT PREVOST FAILED TO DEMONSTRATE EVIDENCE OF DISCRIMINATION OR RETALIATION.

### A. Prevost failed to provide evidence capable of creating a fact issue as to discrimination or retaliation.

Additionally, and in the alternative, even if Prevost's other claims were not barred for failure to exhaust administrative remedies, they fail because Prevost has no evidence of discrimination or retaliation.

---

[7] This Court has previously stated that the "premise of the adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them." *Willis*, 749 F.3d at 317 (quoting *Coggin v. Longview Independent School Dist.*, 337 F.3d 459 (5th Cir.2003) (en banc)).

When there is no direct evidence of discrimination or retaliation, employees may establish a claim for violations of Title VII, the ADA, or the ADEA with circumstantial evidence under the three-part burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). *See Johnson v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, 90 F.4th 449, 460 (5th Cir. 2024); *Harris v. City of Schertz*, 27 F.4th 1120, 1123 (5th Cir. 2022) (ADEA); *Clark v. Champion Nat'l Security, Inc.*, 952. F.3d 570, 582 (5th Cir. 2020) (ADA). Under the first step, the employee has the burden to establish a *prima facie* case of unlawful discrimination or retaliation. *See id.*; *Feist v. La. Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013). Second, if the employee meets her burden to show a *prima facie* case, the burden shifts to the employer to produce evidence of a legitimate, nondiscriminatory reason for the disputed employment action. Although the burden of production shifts between the parties, the burden of persuasion remains continuously with the employee. *Feist*, 730 F.3d at 454. In the third and final *McDonnell Douglas* step, the burden shifts back to the employee to show that the employer's stated reason is false and a pretext for illegal discrimination. *See Johnson*, 90 F.4th at 460-61.

In this case, Prevost fails at the first *McDonnell Douglas* step, because she cannot set forth a *prima facie* claim that the City discriminated against or

42

retaliated against her. Further, the City has legitimate non-discriminatory reasons for all the acts about which Prevost complains, and Prevost cannot establish that the City's reasons were a pretext for discrimination or retaliation.

### 1.    Prevost failed to establish a *prima facie* case of discrimination.

A plaintiff cannot make a *prima facie* case of discrimination based on conclusory allegations, with no supporting facts or probative evidence to support them. *See Agoh v. Hyatt Corp.*, 992 F. Supp. 2d 722, 748 (S.D. Tex. 2014). To establish a prima facie case of discrimination and defeat summary judgment under either Title VII, the ADA, or the ADEA a plaintiff must present evidence to show: 1) she belongs to a protected group; 2) she was qualified for the position at issue; and 3) she suffered an adverse employment action. *Harrison v. Brookhaven Sch. Dist.*, 82 F.4th 427, 429 (5th Cir. 2023); *Clark*, 952 F.3d at 582.

As a fourth essential element, to support a Title VII or ADEA claim, the plaintiff must also show that she was replaced by someone outside of her protected group or a similarly situated employee outside of her protected group was treated more favorably. *Harrison*, 82 F.4th at 429; *Harris*, 27 F.4th at 1123. For the ADA, the plaintiff must establish that she was subjected to the adverse employment action on account of her disability. *Clark*, 952 F.3d at 582.

There is no dispute that Prevost belongs to a protected group by virtue of her religion, age, and disability. Prevost was also qualified for her position with

43

the City. For the purpose of the City's motion and this appeal only, the City assumes *arguendo*, without conceding, that Prevost has raised a fact issue on whether she suffered an adverse action. However, Prevost cannot establish the fourth essential element for each of her claims of discrimination.

Prevost testified that another administrative specialist outside of her protected class, Thomas Pastrano, was moved at the same time she was to a cubicle near the conference room that developed a leaky roof. ROA.1750. She admitted that the rules for OEM gate access, implemented in September 2021, were consistently applied, such that non-disabled City employees were also required to provide the same driver's license and automobile information before being dropped off within the gates. ROA.1749, 1757. Indeed, Prevost's complaint seems to be not that she was treated less favorably than those outside her protected class, but that she was not treated more favorably than them and granted an exemption to the new rules. Nothing in the record supports that she was entitled to such an exemption. Prevost likewise has no evidence that Vlad Ibarra failed to give a PID to any other employee who was similarly situated to Prevost under nearly identical circumstances. Therefore, Prevost cannot support a *prima facie* case for discrimination under any statute.

44

### 2.     Prevost produced no evidence of unlawful retaliation.

To support a *prima facie* claim for retaliation, a plaintiff must present evidence of all the following: (1) she engaged in activity protected by Title VII, the ADA or the ADEA; (2) the employer took adverse action against her; and (3) a causal connection exists between the protected activity and the adverse action. *Hall v. UiPath, Inc.*; 123 F.4th 419, 422 (5th Cir. 2024); *Johnson*, 90 F.4th at 460; Clark, 952 F.3d at 588

Here, Prevost arguably made a protected claim of discrimination when she made her complaint to Director Mock on November 7, 2021, which was then forwarded to OIG. ROA.1806–8. There is no evidence of any materially adverse action taken against Prevost after she made that complaint. To constitute unlawful retaliation, "an employment action must be 'materially adverse,' one that would 'dissuade[] a reasonable worker from making or supporting a charge of discrimination.'" *Stewart v. Miss. Transp. Com'n*, 586 F.3d 321, 331 (5th Cir. 2009) (quoting *Burlington Northern and Santa Fe Ry. Co. v. White*, 584 U.S. 53, 68 (2006)). "The purpose of this objective standard is 'to separate significant from trivial harms' and 'filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, … jokes, and occasional teasing.'" *Id*. To be "materially adverse," an employment action must objectively worsen the employee's working conditions.

45

*See Hudson v. Lincare, Inc.*, 58 F.4th 222, 232 (5th Cir. 2023). Plaintiff has not alleged any action by the City which meets this standard.

Finally, Prevost cannot show any causal link between her protected activity and any alleged adverse action. To establish causation, an employee must establish that her protected activity was a but-for cause of the alleged adverse action by the employer. *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). Prevost also cannot show that her employment situation changed in any appreciable way after she lodged her complaint with Director Mock and OIG. Consequently, there is no fact issue concerning Prevost's retaliation claim, and the City is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Vann*, 884 F.3d at 309.

### 3. Prevost failed to show that the City's legitimate non-retaliatory reasons for its actions are pretextual.

Even if Prevost could make a *prima facie* of discrimination or retaliation—which she cannot—the City has legitimate non-retaliatory reasons for every action at issue in this case. Prevost moved offices in 2020 or 2021 due to construction in her building. ROA.1751, 1812. She was not selected for the position of Grant Administrator in March 2021 because the selection process was highly competitive and the selected candidate was more educated and better qualified than her. ROA.1814–18, 1827–30. She was given a PID on April 26, 2021 for the reasons written on that form. ROA.1804–05. Prevost's husband was

46

not permitted to drive through the OEM gates after September 23, 2021 because she did not provide the identification required to comply with OEM's new security protocol. ROA.1748, 1757–59, 1793–1800. The City's IT personnel determined that any deletions of Prevost's emails were due to user error, and not by any actions of a third party. ROA.1833. The City did not force Prevost to retire; she resigned voluntarily because her health had declined so severely that she was no longer physically able to work. ROA. 1742–43, 1777. Prevost has no evidence whatsoever that any of the City's actions were a pretext for discrimination or retaliation. ROA.2220–38. Consequently, there is no fact issue concerning Prevost's claims under Title VII, the ADA, and the ADEA, and the City is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Vann*, 884 F.3d at 309.

### B.    Prevost's arguments on appeal are unpersuasive.

On appeal, Prevost argues that the district court "incorrectly applied the burden-shifting framework." Appellant's Brief, 18. Specifically, Prevost complains that the district court "failed to assess in the [City's] reasons for adverse actions were pretextual, neglecting the third step of the analysis." *Id.*

Fundamentally, this argument fails to recognize that it is the *plaintiff* who bears the burden in the *McDonnell Douglas* framework—*not* the defendant. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) ("The complainant

47

in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of [] discrimination.").

Prevost's membership in several protective classes has never been in dispute. But Prevost's claim for discriminatory retaliation failed because the evidence conclusively denied any *causation* between Prevost's status and the denial of gate access after work. ROA.2957–58. The district court concluded, based upon the record evidence, that Prevost's gate-access was restricted solely based upon her refusal to cooperate with new procedures implemented as a result of security concerns that were globally applied and wholly unrelated to her status. ROA.2957–58. Contrary to Prevost's complaints, additional medical information was never requested. Rather, the new policy—applicable to everyone—required employees to provide the specified vehicle and driver identification information to assist the security contractors staffing the gate in admitting employee's family members while maintaining the desired level of security for the facility. ROA.1758–59, 1797–98, 1808. Thus, since the change in OEM's security policy had absolutely nothing to do with Prevost's status, it could not form the basis for any *prima facie* claim of discrimination.

Prevost's argument on appeal fails to recognize this distinction, instead repeating old complaints and insisting that she had been singled out—despite

48

the glaring lack of evidence to support her claim. *See* Appellant's Brief, pp. 12–33, 57–63.

Moreover, Prevost fails to demonstrate how the City's legitimate explanation for the new gate access policy was pretextual. *See* Appellant's Brief, pp. 18–19. Prevost argues that such pretext "is evident in the environment of the City of Houston Office of Emergency Management in 2020–2022[.]" *Id.*, p. 18. But Prevost does not cite any evidence to support this conclusory assertion. *See id.* Accordingly, Prevost's argument fails.

## VI.   THE DISTRICT COURT PROPERLY DENIED PREVOST'S MOTION FOR SUMMARY JUDGMENT FOR LACK OF EVIDENTIARY SUPPORT.

On appeal, Prevost complains that the district court never ruled on her timely filed motion. *See* Appellant's Brief, p. 60. Again, Prevost is simply wrong.

In its Recommendation, the district court specifically addressed Prevost's own Motion for Summary Judgment, describing it as "conclusory" and without explanation for "how the attached evidence supports the elements of her [] claims." ROA.2961–62. The district court also observed that much of Prevost's evidence is not relevant to her claims. ROA.2962. It was on this basis that the district court concluded that Prevost was not entitled to the summary judgment sought through her motion. ROA.2961–62.

## VII. PREVOST FAILED TO DEMONSTRATE IMPROPER JUDICIAL BIAS BY MAGISTRATE JUDGE CHRISTINA BRYAN.

As in her Objections to the Memorandum and Recommendations of the Magistrate Judge in the court below, Prevost attacked the judge that ruled against her. Disappointed in having her suit dismissed, Prevost argues that Magistrate Judge Christina Bryan demonstrated improper judicial bias. *See* Appellant's Brief, pp. 25–32, 60. Again, Prevost is wrong.

The Due Process Clause requires a "fair trial in a fair tribunal." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997) (citing *Withrow v. Larkin*, 421 U.S. 35, 46 (1975)). Accordingly, to prove judicial bias in contravention of due process, a party must demonstrate that the trial judge had an actual bias against her or an interest in the outcome of his particular case. *See id*. at 905 (citing *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 821–822 (1986)).

### A. Judge Bryan's prior rulings are no basis for recusal.

A large portion of Prevost's bias argument is based on prior rulings made by the Magistrate Judge in this case. ROA.1383–1404. As the Supreme Court has observed:

> … [J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion. In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required when no extrajudicial source is involved. [Further], opinions formed by the judge on the basis of facts

50

> introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

*Liteky v. United States*, 510 U.S. 540, 555 (1994) (internal citations and footnotes omitted). An opinion is not extrajudicial if it was "formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings." *Tejero v. Portfolio Recovery Associates, L.L.C.*, 955 F.3d 453, 463 (5th Cir. 2020) (quoting *Liteky*, at 555). Non-extrajudicial facts "do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, at 555. Even the presence of extrajudicial facts, without something more, does not suffice to show bias. *Id*. at 554.

The rulings of which Prevost complains include Judge Bryan's ruling on Plaintiff's Motion to Compel Production of Documents, Motion for Reconsideration regarding an untimely filed Amended Complaint, a Motion to Dismiss Protective Order, and a Motion to Dismiss in Favor or Plaintiff. Prevost

also makes unfounded claims for abuse of power by Judge Bryan based upon the magistrate's rulings. ROA.1385–94.

A United States magistrate judge is authorized to hear and determine any pretrial matter pending before the court, with some exceptions. 28 U.S.C. § 636(b)(1)(A). Judge Bryan acted within her power to hear pretrial matters pending before the court when she made rulings pursuant to Prevost's motions. *See id*. Judge Bryan's rulings regarding Prevost's motions were well-reasoned and grounded in law and fact and do not show an abuse of power.

**B.      Judge Bryan's impartiality cannot be reasonably questioned.**

Prevost argues Judge Bryan has a disqualifying relationship with the City due to Judge Bryan's prior practice at the law firm of Smyser, Kaplan, and Veselka. ROA.1384–86, 1394. Prevost claims that Judge Bryan has shown favor to the City because Judge Bryan represented a party in the same case with City of Houston attorney Deidra Norris Sullivan, *who represented a different party*. ROA.1384–86, 1394. It is not reasonable to question Judge Bryan's impartiality in this suit because of the law firm for which Judge Bryan worked *eight years ago*, prior to taking the bench. *See* 28 U.S.C. § 455(a)*; Raborn*, 352 Fed. Appx. at 883. Nor is it reasonable to question Judge Bryan's impartiality because, in her prior practice, Judge Bryan represented a co-defendant in a case in which an attorney

for Defendant represented a separate co-defendant. *See* 28 U.S.C. § 455(a)*; Raborn*, 352 Fed. Appx. at 883.

Lastly, Prevost argues there have been "reports of improper communication occurring solely between Bryan and the City of Houston's attorneys, with no involvement of Plaintiff Valerie Prevost in these discussions." ROA.1385. This is a wholly false and unfounded allegation. The City has not engaged in any *ex parte* communications with the district court—nor is there any proof of such communications. However, *Prevost* received multiple admonitions from the district court's staff to include the City in communications with the district court. ROA.1691–95.

A reasonable person, knowing all the relevant facts, would not harbor any doubts about Judge Bryan's impartiality. A review of Judge Bryan's rulings in this case will show nothing more than rulings grounded in law. Therefore, Prevost's argument is without merit. *See* 28 U.S.C. § 455(a)*; Raborn*, 352 Fed. Appx. at 883.

Notably, Prevost failed to support her argument of judicial bias with even one citation to the Record. *See* Appellant's Brief, pp. 25–32, 60. This is understandable since there is not one iota of proof to support Prevost's claim of judicial bias. The transcripts of the two conferences demonstrate that Judge

Bryan was patient and empathetic. ROA.3700–12, 3714–56. But Judge Bryan is also constrained to follow the law.

Accordingly, Prevost's complaint of judicial bias is without merit.[8]

### Prayer for Relief

For the foregoing reasons, Appellees, the City of Houston, Houston, Legal Department, Labor and Employment, ask that this Court affirm the judgment of the district court.

---

[8] Prevost also argues about a "bias" against *pro se* litigants. *See* Appellant's Brief, pp. 29–30. But again, the transcript of each hearing demonstrates the exact opposite. ROA. 3700–12, 3714–56. Judge Bryan was consistently courteous and supportive with Prevost, even granting Prevost's request to pray during the proceedings. ROA.3724. Thus, Prevost's argument concerning bias against *pro se* litigants is entirely without merit.

Respectfully submitted,

ARTURO G. MICHEL
City Attorney
SUZANNE R. CHAUVIN
Chief, General Litigation Section

By:   */s / Donald B. Hightower*
      Donald B. Hightower
      Senior Assistant City Attorney
      SBN: 24062780
      donald.hightower@houstontx.gov
      CITY OF HOUSTON LEGAL DEPARTMENT
      900 Bagby, 4th Floor
      Houston, Texas 77002
      Telephone:   832.393.6429
      Facsimile:   832.393.6259

*Defendants-Appellees City of City of Houston, Houston, Legal Department, Labor and Employment*

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF e-service on October 31, 2025 on the following counsel of record:

Valerie Prevost, *Pro Se*
13538 Forest Gully
Houston, Texas 77067
vprevost1@yahoo.com

*Plaintiff - Appellant*

      */s/ Donald B. Hightower*
      Donald B. Hightower

## Certificate of Compliance

This reply complies with the type-volume limitation of Fed. R. App. P. 32(g)(1) and 27(d)(2)(a) in that it contains 10,767 words. It also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) in that it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Calisto MT 14 point font.

*/s/ Donald B. Hightower*

Donald B. Hightower